UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LUIS CARDENAS-ORNELAS,<br><br>                      Petitioner,<br>    v.<br><br>CALVIN JOHNSON,[1] *et al.*,<br><br>                      Respondents. | Case No. 3:17-cv-00461-MMD-CLB<br><br>ORDER |

Petitioner Luis Cardenas-Ornelas, who is serving 10 years to life plus a consecutive term of 8 to 20 years after a jury found him guilty of second-degree murder with a deadly weapon, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 41-18.) This matter is before this Court for adjudication of the merits of the remaining grounds in Cardenas-Ornelas's amended petition, which allege that the prosecution took inconsistent positions in separate trials for the same offense and counsel failed to perform an adequate investigation, advise him of the consequences of rejecting the plea offer, and mitigate at sentencing. (ECF No. 22 ("Petition").) For the reasons discussed below, the Court denies the Petition and a Certificate of Appealability.

///
///
///
///

---

[1]The state corrections department's inmate locator page states that Cardenas-Ornelas is currently incarcerated at High Desert State Prison. Calvin Johnson is the current warden for that facility. At the end of this order, this Court directs the Clerk of Court to substitute Calvin Johnson as a respondent for the prior respondent Rene Baker, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.  BACKGROUND[2]

On August 26, 2009, around 10:00 p.m., Michael Vega, Martin Rodriguez, Carlos Reyes (hereinafter "Carlos"), Salvador Dellaluse (hereinafter "Salvador"), Jesus Dellaluse (hereinafter "Jesus") and three women, including Carlos' cousin, Erica Reyes (hereinafter "Erica"), were in a parking lot outside of a McDonald's restaurant in Reno, Nevada. (ECF No. 40-45 at 40-43, 59.) Rodriguez and Salvador were members of the WSK gang, and Vega and Carlos were members of the DMK gang. (*Id.* at 52-53.) Carlos had been looking for Oscar Uribe, Erica's boyfriend, because Uribe had battered Erica, and Carlos wanted to fight him. (*Id.* at 43-44.)

Earlier that evening, the group had gone to the McDonald's restaurant so that Erica could obtain Uribe's whereabouts from Uribe's cousin, J.R., who worked there. (ECF No. 40-45 at 51.) After the group left the restaurant in search of Uribe, they visited a park, but finding Uribe not there, they returned to the McDonald's parking lot. (*Id.* at 55, 58.) A red passenger van slowly entered the parking lot. (*Id.* at 61.) The occupants of the van were staring at Erica's group in the parking lot, so Erica's group mistakenly believed Uribe was in the van with potential I.S. gang members. (*Id.* at 61-62.) Vega, Rodriguez, Carlos, Salvador, and Jesus exited their vehicle and threw rocks at the van. (*Id.* at 64, 86-87.) The van sped up initially but then slowed down, and the side door opened, displaying an assault rifle. (*Id.* at 65.) The assault rifle fired numerous times at the group, and Vega was shot and killed. (*Id.* at 65, 69.)

J.R. testified that Cardenas-Ornelas and Cardenas-Ornelas's brother, Antonio Cardenas-Ornelas (hereinafter "Antonio"), were his friends. (ECF No. 41-4 at 119-20, 123-24.) On August 26, 2009, around 9:00 p.m., Erica entered the McDonald's restaurant to ask J.R. about Uribe's whereabouts, and after J.R. said he did not know, Erica told J.R.

---

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify this Court overlooked it in considering Cardenas-Ornelas's claims. The Court refers to witnesses by their last names unless otherwise indicated.

that Uribe "better watch his back." (*Id.* at 124-25, 139.) J.R. saw Erica was with approximately eight people and recognized some of them from an altercation he and Cardenas-Ornelas had with members of the DMK gang a month earlier. (*Id.* at 124, 132, 138-39.) During that prior altercation, Cardenas-Ornelas "got cracked in the forehead" and had to be taken to the hospital. (*Id.* at 135, 138.) Following his conversation with Erica, J.R. called Cardenas-Ornelas and Antonio to tell them that there were some people outside of the McDonald's restaurant who appeared to belong to the DMK gang. (*Id.* at 127-29.) J.R. testified he was afraid the gang members were going to confront him when he left the restaurant. (*Id.* at 140-41.)

Moises Gutierrez-Paredes testified that he was a friend of Cardenas-Ornelas, who was a member of the I.S. gang, and that he was at Cardenas-Ornelas's apartment, where Cardenas-Ornelas lived with his mother and brother, on the evening of August 26, 2009, celebrating Cardenas-Ornelas's mother's birthday. (ECF No. 41-4 at 145, 150, 154.) That night, Gutierrez-Paredes, Cardenas-Ornelas, and Antonio left the apartment in Cardenas-Ornelas's mother's red van and went to the McDonald's restaurant with a rifle belonging to Cardenas-Ornelas because Cardenas-Ornelas "had received a phone call from [J.R.] saying he was being bothered by another group of kids." (*Id.* at 152-53, 156.) Gutierrez-Paredes testified that Antonio drove the van, Gutierrez-Paredes was in the front passenger seat, and Cardenas-Ornelas was in the back seat. (*Id.* at 152.) Gutierrez-Paredes saw a group of four or five unarmed guys, whom he identified as "rivals," standing outside a vehicle in the McDonald's parking lot. (*Id.* at 162-63, 171.) After seeing the group throw rocks at the van, Gutierrez-Paredes heard the van's side door open and Cardenas-Ornelas fire four or five shots in the group's "direction, but not at them." (*Id.* at 166-67.)

Gutierrez-Paredes originally told law enforcement that he, Cardenas-Ornelas, and Antonio never left Cardenas-Ornelas's apartment the night of August 26, 2009, but Gutierrez-Paredes changed his story, explaining that Cardenas-Ornelas drove the van to the McDonald's and Antonio was the one who shot the rifle. (ECF No. 41-4 at 190-91.)

1  Gutierrez-Paredes testified he lied about Antonio being the shooter because Antonio was
2  brought into the room during Gutierrez-Paredes's law enforcement interview "and in front
3  of the two police detectives said he did it." (*Id.* at 193.) Gutierrez-Paredes's went along
4  with Antonio's narrative because he "didn't have any time to think." (*Id.*)

5  Cardenas-Ornelas was also interviewed by law enforcement, and he also initially
6  denied involvement in the shooting. (ECF No. 41-5 at 70.) Cardenas-Ornelas eventually
7  changed his story and told law enforcement he drove the van, Antonio was in the front
8  passenger seat, and Uribe was in the backseat and "shot at the ground" with the rifle. (*Id.*
9  at 75, 77, 79.) Cardenas-Ornelas changed his story again, and in the third version of
10 events given to law enforcement, Cardenas-Ornelas said that Gutierrez-Paredes was in
11 the van, not Uribe, and Antonio was the shooter. (*Id.* at 86.) After Cardenas-Ornelas left
12 the police station following his interview, he called detectives several times and
13 "expressed his concern about his younger brother Antonio doing the jail time." (*Id.* at 100.)
14 Cardenas-Ornelas asked detectives "to ask the District Attorney if he [could] do the jail
15 time for his brother." (*Id.*) The following day, Cardenas-Ornelas called the detectives
16 again and said, "he was the shooter" and "Antonio was driving." (*Id.* at 101.) Cardenas-
17 Ornelas told detectives he went to the McDonald's restaurant to protect J.R. and "scatter
18 the rival gang" by shooting. (*Id.* at 104-05.) Cardenas-Ornelas also told detectives he
19 "shot into the ground and the ricochet" of the bullet caused Vega's death. (*Id.* at 114.)

20 Antonio testified for the defense and explained that he had been convicted of a
21 felony "arising from the homicide of Michael Vega." (ECF No. 41-7 at 26.) Antonio testified
22 that Cardenas-Ornelas was driving the van, Gutierrez-Paredes was in the front passenger
23 seat, and he was in the back seat. (*Id.* at 31.) Antonio testified that he shot the rifle
24 "towards the ground to scare them away." (*Id.* at 35.) Antonio also testified that he initially
25 told law enforcement that Cardenas-Ornelas was the shooter. (*Id.* at 74.)

26 ///
27 ///
28 ///

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Ground 1—prosecution's inconsistent positions

In ground 1, Cardenas-Ornelas alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the prosecution took inconsistent positions in separate trials for the same offense. (ECF No. 22 at 8.) Cardenas-Ornelas explains that the prosecutor's position in Antonio's trial was that "Antonio was the one who fired the gun," but the "same prosecutor portrayed him as the shooter" at his trial. (*Id.*)

#### 1. Background information

The prosecutor made the following comments during his opening argument at Cardenas-Ornelas's trial: "Whether you . . . believe [Cardenas-Ornelas's] first story that it was Antonio, his brother, who fired the gun . . . or whether you believe that the evidence supports his last story that he was the shooter," Cardenas-Ornelas "is responsible for the death of Michael Vega because of his participation and action towards that unified goal." (ECF No. 40-45 at 33.) Similarly, the prosecutor made the following comments during his closing argument at Cardenas-Ornelas's trial: Cardenas-Ornelas "is liable for . . . Michael Vega's death based on . . . his involvement and participation, whether he fired that gun or whether he drove the vehicle so that the shooter c[ould] fire it." (ECF No. 41-7 at 129.)

///

///

6

### 2. State court determination

In affirming Cardenas-Ornelas's judgment of conviction, the Nevada Supreme Court held:

> Appellant contends his due process rights were violated when the prosecutor took inconsistent positions in his brother's trial for the same offense. Because appellant failed to object below, we review his claim for plain error affecting his substantial rights. *See* NRS 178.602; *Cordova v. State*, 116 Nev. 664, 666, 6 P.3d 481, 482-83 (2000). No such error occurred here. A prosecutor may present arguments consistent with the evidence actually adduced at each trial when both defendants share responsibility. *Nguyen v. Lindsey*, 232 F.3d 1236, 1240-41 (9th Cir. 2000). Here, the prosecutor argued that it did not matter who drove the car or fired the assault rifle. The prosecutor stated, in both cases, that the driver and shooter were equally culpable. Therefore, we conclude that appellant failed to demonstrate plain error in this instance.

(ECF No. 42-2 at 2.)

### 3. Conclusion

The State violates a defendant's right to due process if it knowingly uses false evidence. *See Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935); *Berger v. United States*, 295 U.S. 78, 84-89 (1935). Consequently, "[i]t follows that a prosecutor's pursuit of fundamentally inconsistent theories in separate trials against separate defendants charged with the same murder can violate due process if the prosecutor knowingly uses false evidence or acts in bad faith." *Nguyen v. Lindsey*, 232 F.3d 1236, 1240 (9th Cir. 2000); *see also Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) ("[W]hen no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime."), *rev'd on other grounds*, 523 U.S. 538 (1998).

As the Nevada Supreme Court reasonably concluded, the prosecutor argued that Cardenas-Ornelas was guilty of the murder of Vega whether he was driving the vehicle

or whether he fired the rifle.³ (*See* ECF Nos. 40-45 at 33; 41-7 at 129.) As such, because the prosecution did not categorically portray him as *the* shooter, Cardenas-Ornelas fails to demonstrate that the prosecutor pursued an inconsistent theory at his trial compared to Antonio's trial where the prosecution allegedly argued that Antonio was the shooter. *See Haynes v. Cupp*, 827 F.2d 435, 439 (9th Cir. 1987) (rejecting the petitioner's argument that the prosecution "pursu[ed] inconsistent theories of the case" based on the "differences between his trial and that of a codefendant" because "the underlying theory of the case, that all three defendants were equally culpable, remained consistent throughout"). Therefore, the Nevada Supreme Court reasonably denied Cardenas-Ornelas's inconsistent theories claim, and he is not entitled to federal habeas relief for ground 1.⁴

## B. Ground 4—ineffective assistance of counsel

In ground 4, Cardenas-Ornelas alleges that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated due to various errors by counsel. (ECF No. 22 at 14.)⁵

---

³The prosecution charged Cardenas-Ornelas with murder under four theories of liability: (1) he killed Vega "with malice aforethought, deliberation, and premeditation"; (2) he killed Vega "in the perpetration of an inherently deadly felony"; (3) he aided and abetted Antonio in killing Vega; or (4) he conspired with Antonio in killing Vega. (ECF No. 41-8 at 5-6.)

⁴Grounds 2 and 3 were previously dismissed. (ECF Nos. 53 at 7; 56.)

⁵Cardenas-Ornelas urges this Court to conduct a *de novo* review of ground 4 because the state district court refused to hold an evidentiary hearing on his state habeas claims, and, as such, he argues that the Nevada Supreme Court's denial of these claims constituted an unreasonable determination of the facts. (ECF No. 22 at 17, 22.) "A state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question." *Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012). As will be discussed in each subpart of ground 4, the Nevada Supreme Court reasonably concluded that Cardenas-Ornelas's ineffective-assistance-of-counsel claims were reasonably denied by the state district court based on evidence already adduced such that an evidentiary hearing was

### 1. Standard for ineffective assistance of counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified

---

unnecessary. Therefore, the state court's failure to hold an evidentiary hearing did not render its fact-finding process unreasonable.

that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### 2. Ground 4(a)—investigation and consulting of experts

In ground 4(a), Cardenas-Ornelas alleges that counsel failed to perform an adequate investigation and hire experts necessary to put on an adequate theory of defense. (ECF No. 22 at 14.) Cardenas-Ornelas elaborates that counsel failed to engage in any pretrial investigation, including interviewing any witnesses; failed to consult an expert on the bullets' trajectories, which would have shown that the shots were fired into the ground and supported his self-defense theory; and failed to consult an expert on gang affiliation and behavior, which would have shown that he and Antonio acted reasonably in protecting themselves from gang aggression. (*Id.* at 15.)

#### a. State court determination

In affirming the denial of Cardenas-Ornelas's state habeas petition, the Nevada Supreme Court held:

> Cardenas-Ornelas first argues that counsel should have retained and presented expert testimony on bullet trajectories and gang affiliation to show that he acted in self-defense. Cardenas-Ornelas drove up with his brother and their friend to a group of young men with whom they had a dispute, fired an assault rifle at them, and killed one of their number. The fatal bullet and the crime scene belied Cardenas-Ornelas's claim that the assault rifle was fired in self-defense at the unarmed victims. NRS 200.020(2) ("Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart."); *Keys v. State*, 104 Nev. 736, 738, 766 P.2d 270, 271 (1988) (explaining that malice may be implied from intentionally using a firearm in a deadly and dangerous manner that is reckless as to the lives of others). As the record belies the allegation that expert testimony on bullet trajectories would support self-defense, Cardenas-Ornelas failed to show that counsel was deficient in omitting such experts or that he was prejudiced by their absence. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) ("A strategy decision, such as who should be called as a witness, is a tactical decision that is virtually unchallengeable absent extraordinary circumstances." (internal quotation marks omitted)). And Cardenas-Ornelas has failed to allege specific facts to which a gang-affiliation expert would have testified that would support an entitlement to

relief, beyond the bare claim that it would show that he acted "in the face of gang aggression," particularly as he was the apparent aggressor. The district court therefore did not err in denying this claim without an evidentiary hearing.

Second, Cardenas-Ornelas argues that counsel should have investigated and presented witness testimony to show that he acted in self-defense. Cardenas-Ornelas did not identify the witnesses who would have testified on this matter or the substance of their testimony and thus has failed to show that counsel was ineffective in this regard. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (petitioner claiming counsel did not conduct adequate investigation must specify what a more thorough investigation would have uncovered). The district court therefore did not err in denying this claim without an evidentiary hearing.

(ECF No. 3-4.)

### b. Conclusion

As the Nevada Supreme Court reasonably concluded, Cardenas-Ornelas fails to identify what witnesses counsel failed to interview or what further investigation counsel failed to conduct. *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (holding that petitioner did not demonstrate that he was prejudiced by counsel's actions because "[h]e offers no indication of what these [uncalled] witnesses would have testified to, or how their testimony might have changed the outcome of the hearing"). And as the Nevada Supreme Court also reasonably concluded, the facts of the case belie Cardenas-Ornelas's claim that he acted in self-defense. Cardenas-Ornelas, Antonio, and Gutierrez-Paredes went to the McDonald's parking lot with an assault rifle, drove slowly by an unarmed group of gang members, and starting shooting at the group in response to a few rocks being thrown at their van. Further, Kerri Heward, a supervising criminalist at the Washoe County Crime Lab, testified that the bullet recovered from Vega was "pretty well intact" and did not have "any heavy scratching on it that would indicate that it hit something along the lines of asphalt" before hitting Vega. (ECF No. 41-5 at 21, 47-48.) Based on this evidence and the overwhelming evidence against Cardenas-Ornelas, the Nevada Supreme Court reasonably determined that Cardenas-Ornelas failed to demonstrate that he was prejudiced by counsel's alleged

failure to consult experts on bullet trajectories and gang affiliation to support his theory that he acted in self-defense. Accordingly, the Nevada Supreme Court's determination that the state district court did not err in denying this claim constituted an objectively reasonable application of *Strickland*. Cardenas-Ornelas is not entitled to federal habeas relief for ground 4(a).

### 3. Ground 4(b)—plea advice

In ground 4(b), Cardenas-Ornelas alleges counsel failed to adequately advise him of the consequences of accepting or rejecting the plea offer. (ECF No. 22 at 17.)

#### a. Background

The prosecution made Cardenas-Ornelas a plea offer sometime after his arraignment. (*See* ECF No. 40-8 at 5.) In a letter Cardenas-Ornelas wrote to the state district court prior to trial, he stated that counsel visited him on one occasion "to try to get [him] to sign the 'deal.'" (ECF No. 40-29 at 3.) However, at a pre-trial status hearing, counsel stated that Cardenas-Ornelas did "not wish to go through with the change of plea that ha[d] been negotiated." (ECF No. 40-24 at 4.) Cardenas-Ornelas stated that counsel "wanted [him] to sign a deal," but he "read the deal, [and] said, no, I'm not going to sign this." (*Id.* at 23.) Cardenas-Ornelas elaborated: "I'm not going to sign the thing and go to prison and later on regret it for the rest of my life. . . . There's a lot of people I seen [sic] like in the county jail, they take the deal and they don't try. I'm trying." (*Id.* at 23.) The state district court then reiterated that Cardenas-Ornelas was "reject[ing] this plea agreement, which is his right." (*Id.* at 35.)

#### b. State court determination

In affirming the denial of Cardenas-Ornelas's state habeas petition, the Nevada Supreme Court held:

> Cardenas-Ornelas argues that counsel failed to adequately advise him on the consequences of the plea offer that he refused. He does not, however, specifically allege what counsel communicated regarding the plea or how the information or advice provided was deficient. Accordingly, this is a bare claim, and the district court therefore did not err in denying it without an evidentiary hearing.

12

(ECF No. 44-12 at 4.)

### c. Conclusion

The record demonstrates that counsel discussed the prosecution's plea offer with Cardenas-Ornelas. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution."). And the record also demonstrates that Cardenas-Ornelas rejected the offer against the advice of counsel. As the Nevada Supreme Court reasonably determined, Cardenas-Ornelas fails to articulate how this decision to reject the plea offer would have differed based on different advice from counsel, especially since Cardenas-Ornelas steadfastly refused the plea offer, stating he would later regret taking a plea deal and not trying to defend against the charges. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advise."); *see also Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) ("In order to prove prejudice where counsel fails to inform the petitioner about a plea offer, the petitioner must prove there was a reasonable probability he would have accepted the offer."). Thus, the Nevada Supreme Court's determination that the state district court did not err in denying this claim constituted an objectively reasonable application of *Strickland*. Cardenas-Ornelas is not entitled to federal habeas relief for ground 4(b).

### 4. Ground 4(c)—sentence mitigation

In ground 4(c), Cardenas-Ornelas alleges counsel failed to put on a case in mitigation at sentencing, including obtaining and presenting a psychological evaluation. (ECF No. 22 at 20.)

### a. Background information

Counsel made the following argument at Cardenas-Ornelas's sentencing:

> Your Honor, having presided over the jury trial in this case, you're intimately familiar with the facts and I think one thing that stands clear is this was a very tragic circumstance. There was some reckless activity by a youth, two youths, and it resulted in a death of another young man, very tragic circumstances.

13

> Mr. Cardenas and I concur with the recommendation made in the presentence investigation report. There is only one other alternative sentence and that would be a term of ten to 25 for the second degree murder conviction. The parole eligibility for him is the same given the law that governs that. And we would ask you to impose it.
>
> If you look at his criminal history, you don't see anything but juvenile offenses. Granted, he was only 18 at the time, 19 now. But with that criminal history and the fact that he is jointly liable both in the legal sense and for his conduct in this case with his brother Antonio, who received the sentence recommended in the presentence investigation report, if you impose that, it will avoid any kind of unwarranted disparity between two individuals who are similarly situated. I think that's a guided principle in the imposition of a sentence, especially in a case like this with these facts.
>
> So I would ask you to impose the sentence that is recommended. It's appropriate considering his lack of criminal history and the circumstances in this case.

(ECF No. 41-17 at 6-7.)

The state district court sentenced Cardenas-Ornelas to 10 years to life for second-degree murder and 8 to 20 years for using a deadly weapon. (*Id.* at 23, 25.) The state district court explained that it based Cardenas-Ornelas' second-degree murder sentence on the following factors: Cardenas-Ornelas used an assault rifle, the victim was only 16 years old, and the need to send a message to the community that "gang life is a dead end." (*Id.* at 21-23.) And regarding Cardenas-Ornelas' sentence for the deadly weapon enhancement, the state district court explained:

> The Court specifically finds that the facts and circumstances of this crime are without mitigation. This was a crime . . . in which the defendant intentionally took a weapon, an assault rifle, went to a shopping center and a fast food restaurant where families meet and when confronted by other unarmed individuals, slid open the side of that van and opened fire with an assault rifle striking and killing the victim in this case. This is the most egregious crime.

(*Id.* at 24.)

### b. State court determination

In affirming the denial of Cardenas-Ornelas's state habeas petition, the Nevada Supreme Court held:

14

> Cardenas-Ornelas argues that counsel should have presented mitigation evidence at sentencing, including a psychological evaluation. Cardenas-Ornelas does not identify any psychologist who would testify that he would be likely to rehabilitate and contribute to society, and this allegation was thus purely speculative. Cardenas-Ornelas does not specifically identify any other mitigation evidence that counsel could have obtained. *See Hernandez v. State*, 124 Nev. 978, 991, 194 P.3d 1235, 1244 (2008), *overruled on other grounds by Armenta-Carpio v. State*, 129 Nev. 531, 306 P.3d 395 (2013). The district court therefore did not err in denying this bare claim without an evidentiary hearing.

(ECF No. 44-12 at 4-5.)

### c. Conclusion

Although counsel's argument at Cardenas-Ornelas's sentencing hearing was brief, Cardenas-Ornelas fails to articulate what mitigation counsel failed to present. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying habeas relief because the petitioner's "conclusory allegations did not meet the specificity requirement"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Thus, Cardenas-Ornelas fails to demonstrate that counsel acted deficiently. Further, even if Cardenas-Ornelas demonstrated deficiency, any argument that mitigation would have changed the sentence Cardenas-Ornelas received is belied by the state district court's statement at sentencing that Cardenas-Ornelas committed the most egregious crime such that "the facts and circumstances of th[e] crime are without mitigation." (ECF No. 41-17 at 24.) Accordingly, the Nevada Supreme Court's determination that the state district court did not err in denying this claim constituted an objectively reasonable application of *Strickland*. Cardenas-Ornelas is not entitled to federal habeas relief for ground 4(c).

### 5. Ground 4(d)—cumulative error

In ground 4(d), Cardenas-Ornelas alleges that the cumulative errors of counsel entitle him to relief. (ECF No. 22 at 22.) In affirming the denial of Cardenas-Ornelas's state habeas petition, the Nevada Supreme Court held: "Cardenas-Ornelas argues that cumulative error merits relief. Cardenas-Ornelas has failed to identify any error to

cumulate, and the district court therefore did not err in denying this claim." (ECF No. 44-12 at 5.) This ruling was reasonable.

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court has not identified any counsel errors, so there are no errors to cumulate. Cardenas-Ornelas is not entitled to federal habeas relief for Ground 4(d).[6]

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Cardenas-Ornelas. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if

---

[6]Cardenas-Ornelas requests that the Court conduct an evidentiary hearing. (ECF No. 22 at 23.) Cardenas-Ornelas fails to explain what evidence would be presented at an evidentiary hearing. Further, neither further factual development nor any evidence that may be proffered at an evidentiary hearing would entitle Cardenas-Ornelas to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, it true, would entitle the applicant to federal habeas relief."). Cardenas-Ornelas's request is denied.

reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id*.

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

### VI. CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 22) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute Calvin Johnson for respondent Rene Baker, enter judgment accordingly, and close this case.

DATED THIS 25th Day of January 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

17